# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **ADAM WARD,** *individually, and on behalf of all others similarly situated,* <br><br> Plaintiff, <br><br> v. <br><br> **LIBERTY MUTUAL INSURANCE COMPANY,** <br><br> Defendant. | Civil Action No. 1:24-cv-10526 <br><br> CLASS-ACTION <br><br><br> **Jury Trial Demanded** |

## CLASS ACTION COMPLAINT

Plaintiff, Adam Ward ("Plaintiff" or "Ward"), on behalf of himself and all others similarly situated, by and through his undersigned attorneys, submits his Complaint against Defendant, Liberty Mutual Insurance Company ("Liberty Mutual"). In support thereof, Plaintiff states as follows:

### NATURE OF THE CASE

1. Plaintiff, Adam Ward brings this action individually and on behalf of all others similarly situated, seeking damages and any other available legal or equitable remedies resulting from the unlawful actions of Defendant Liberty Mutual.

2. In violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.* and the TCPA's corresponding regulations, Liberty Mutual places solicitation calls to Plaintiff and the putative class members' residential telephone numbers registered on the National Do Not Call Registry.

## BACKGROUND ON THE TCPA

3. In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the TCPA into law, to protect consumers' privacy rights- specifically, the right to be left alone from unwanted telemarketing calls.

4. A leading sponsor of the TCPA described telemarketing "robocalls" as the "scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

5. The TCPA, through the accompanying FCC regulations, 47 C.F.R. § 64.1200(c) *et seq.*, affords special protections for "residential subscribers" who register their phone numbers on the National Do Not Call Registry.

6. Since 2003, persons who register cell phone numbers on the Do Not Call registry have been considered to be "residential subscribers" for the purpose of 227(c)(5) and the Do Not Call registry. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003) ("we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'")

7. 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c) provide that each person who receives more than one call within a 12-month period, where that called party did not provide express written consent upon a clear and conspicuous disclosure from the telemarketer, after the phone number was registered on the National Do Not Call Registry for more than 31 days is entitled to recover $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

8. Decades after the TCPA passed into law, it is still unfortunately the case that "month after month, unwanted telemarketing calls and texts top the list of consumer complaints


received by the [Federal Communications] Commission." Omnibus TCPA Order, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

9. In fact, in 2021 alone, there were over *five million complaints* from Americans to the FTC about unwanted telemarketing calls. Federal Trade Comm'n, *FTC Issues Biennial Report to Congress on the National Do Not Call Registry (*Jan. 5, 2022) *available* at: https://www.ftc.gov/news-events/news/press-releases2022/01/ftc-issues-biennial-report-congress-national-do-not-call-registry.

10. The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

## JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. See *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

12. This Court has personal jurisdiction over Defendant, Liberty Mutual which is headquartered and conducts business in the State of Massachusetts.

13. Because Defendant is headquartered in this State and within this District, personal jurisdiction exists and venue is proper pursuant to 28 U.S.C. §1391(b)(1).

## PARTIES

14. Plaintiff, Adam Ward is a citizen and resident of Cocoa, Florida.

15. Plaintiff is a "person" as that term is defined by 47 U.S.C. §153(39).

16. Defendant Liberty Mutual is a Massachusetts corporation with headquarters located at 175 Berkeley Street, 9th Floor, Boston, Massachusetts 02116.

17. Liberty Mutual is a "person" as that term is defined by 47 U.S.C. §153(39).

18. Liberty Mutual acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

19. At all times relevant hereto, Plaintiff, Adam Ward is and was the customary user of a cellular phone, the number for which was XXX XXX-6566 (the "6566 Number").

20. Ward registered the 6566 Number on the National Do Not Call Registry ("NDNCR") on August 6, 2005.

21. Ward registered that cell phone number on the NDNCR to afford himself the protections of the NDNCR, namely solitude from invasive and irritating telemarketing calls.

22. At all times relevant hereto, Ward used the aforementioned cell phone primarily for residential purposes.

23. The subject cell phone was registered to Ward as an individual and not to a business.

24. Between March 26, 2020 through March 30, 2020, Liberty Mutual engaged in a telemarketing campaign directed toward Adam Ward in furtherance of its efforts to sell him an insurance policy he did not want or need.[1]

25. During that time, Mr. Ward was not seeking insurance quotes and was satisfied with his current providers.

26. Ward did not provide express written consent or any consent for those solicitation calls and texts.

27. Furthermore, prior to the telemarketing campaign, Ward did not have any established business relationship with Liberty Mutual.

28. Ward received an unsolicited text message from Liberty Mutual or someone acting (and speaking) on its behalf on March 26, 2020 at 7:04 pm from the number (912) 208-7344:

> "Hi allen[2]! Liberty Mutual here. I have your quote and will call you in 15 min unless there is a better time? Or tell me if you're no longer interested."

29. Ward immediately responded that he was not interested and that he did not consent to being contacted.

30. Nevertheless, Liberty Mutual continued to call Ward.

31. Additionally, at least three (3) of the calls made to Ward contained pre-recorded messages.

32. Ward knew that the calls were pre-recorded because each featured an unnatural voice that was non-interactive. Further, the recordings each directed Ward to press buttons to navigate the calls, as opposed to simply asking a question, as a live person would do.

---

[1] Mr. Ward had received numerous insurance telemarketing calls and texts around that time from various insurers, Liberty Mutual being only one of them.

[2] Mr. Ward's first name was misidentified in the text message.

33. For instance, the call placed on March 27, 2020 transpired as follows:

"Hello, this is Liberty Mutual. We've been trying to reach you about the auto insurance quote you asked for. Press 1 to compare rates now. We value your time, and it will only take a few minutes. To schedule a call for another time, press 2. If you do not want to be contacted again, press '9'. (…) Hello, this is Liberty Mutual. We've been trying to reach you about the auto insurance quote you asked for. Press '1' to compare rates now. We value your time (…)"

34. Ward received a total of seven (7) calls and text messages from Liberty Mutual. Those calls were made to Ward on the following instances:

| Date and Time of Call | Number on Caller ID |
| --- | --- |
| March 26, 2020 at 7:04 pm (text message) | (912) 208-7344 |
| March 26, 2020 at 7:20 pm | (912) 208-7344 |
| March 27, 2020 at 10:14 am | (912) 208-7344 |
| March 27, 2020 at 3:33 pm (prerecorded message) | (912) 208-7344 |
| March 28, 2020 at 12:34 pm (prerecorded message) | (912) 208-7344 |
| March 28, 2020 at 5:00 pm (prerecorded message) | (912) 208-7344 |
| March 30, 2020 at 9:39 am | (912) 208-7344 |

35. Ward called Liberty Mutual on June 15, 2020 to inquire about the calls he received. A licensed agent of Liberty Mutual who identified himself as "Daniel", confirmed that calls were placed directly by Liberty Mutual on or about those dates identified above.

36. These calls were not made for "emergency purposes," but rather for solicitation purposes.

37. As a result of the foregoing, Plaintiff experienced frustration, annoyance, irritation and a sense that his privacy has been invaded by Defendant.

38. The foregoing acts and omissions were in violation of the TCPA.

## **Direct and Vicarious Liability**

39. Without having had the benefit of discovery to show otherwise, Plaintiff alleges Liberty Mutual is directly liable for the unsolicited calls and text message at issue because they were placed or made directly by Liberty Mutual.

40. Alternatively, if discovery reveals that some or all of the calls and/or text message were made by third-party/parties on behalf of Liberty Mutual, then Liberty Mutual is vicariously liable for those calls or text.

41. On May 9, 2013, the FCC determined that this was not a basis for avoiding liability within a Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 FCC Rcd 6574 at 6588 (F.C.C. May 9, 2013) (internal citations omitted).

42. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and

immediate direction and control over third parties who place a telemarketing call. *Id*., at 6587 n. 107.

43. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.,* at 6593.

44. Defendant Liberty Mutual may have hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by third-party telemarketers that are currently unknown to Plaintiff and only known to Liberty Mutual.

45. Liberty Mutual's third-party telemarketers had actual and/or apparent authority to act on behalf of Liberty Mutual.

46. Liberty Mutual also ratified its agents' violations of the TCPA by accepting leads and deriving profit from sales imitated by unlawful robocalls.

47. Liberty Mutual acted as a principal to telemarketing agent(s) whose identity or identities are unknown at this time.

48. Liberty Mutual is not permitted under the law to outsource and contract its way out of liability by directing and benefitting from its agents' TCPA violations.

49. For the counts identified below, to the extent any call was made by a third-party agent acting on Liberty Mutual's behalf, Liberty Mutual is vicariously liable as it encouraged and benefitted from its agents' violative conduct.

50. In the alternative, to the extent Liberty Mutual placed one or more unlawful call directly, Liberty Mutual would be directly liable for each violative call.

## CLASS ALLEGATIONS

51. Plaintiff brings this claim on behalf of a class, pursuant to Federal Rule of Civil Procedure 23.

52. Plaintiff seeks to represent the following classes:

**Pre-Recorded Voice Class:** All persons in the United States where: (1) the person received a telephone call using prerecorded or artificial voice from Liberty Mutual or someone acting on Liberty Mutual's behalf; (2) which was not made with the person's prior express written consent, from four years prior to the date of the filing of the original lawsuit to the date of class certification.

**Do-Not-Call Registry Class:** All persons in the United States where: (1) the person's telephone number was registered on the National Do-Not-Call Registry for 31 or more days; (2) the person's number was registered to an individual rather than a business; (3) the person received two or more calls were on behalf of Liberty Mutual within twelve months; and (4) those calls were for the purpose of soliciting Liberty Mutual's products and/or services, from four years prior to the filing of this Complaint through the date a class is certified.

53. Plaintiff reserves the right to amend or modify the class definitions consistent with the record.

54. The putative class members' identities are readily ascertainable from Defendant's records or records within Defendant's control.

55. Plaintiff's claims are typical of the class members, as all are based on the same facts and legal theories.

56. Plaintiff will fairly and adequately protect the interests of the Class defined in this complaint. The Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor his attorneys have any interests which might cause them not to vigorously pursue this action.

57. This action has been brought, and may properly be maintained, as a class action

pursuant to the provisions of Rule 23 of the Federal Rules Civil Procedure because there is a well-defined community interest in the litigation.

58. Class Members are so numerous and the individual joinder of all class members is impracticable. There are no likely difficulties to be encountered in managing this case as a class action.

59. Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to the following:

   a. Whether Defendant, or someone acting on its behalf, placed solicitation calls to cell phones or landline phones of Plaintiff and the putative class members without obtaining the recipients' prior express written consent;

   b. Whether Defendant's conduct violates 47 U.S.C. §§ 227(c), 227(b) and the corresponding rules and regulations implementing the TCPA; and; and

   c. Whether Plaintiff and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendant's conduct.

60. Plaintiff and the putative class members have claims arising out of Defendant's uniform course of conduct, namely improperly placing prerecorded voice calls to the Plaintiff and the putative class members.

61. Plaintiff will fairly and adequately protect the interests of the class members and Plaintiff has no interests that are averse to the absent class members. Plaintiff is committed to vigorously litigating this matter. Plaintiff has also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Neither the Plaintiff nor his counsel have any interests which might cause them not to vigorously pursue this class action lawsuit.

62. The class action mechanism is superior to other available means for the fair and

efficient adjudication of this case. Each individual class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent and contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

63. Liberty Mutual is headquartered in this District. This District is therefore an appropriate forum in which to adjudicate this dispute.

64. Based on discovery and further investigation, Plaintiff may, in addition to moving for class certification, modify definitions of the class, class claims, and the class period, and/or seek class certification only as to particular issues as permitted under Rule 23. Such modified definitions may be more expansive to include consumers excluded from the foregoing definitions.

**COUNT I**
**DEFENDANT VIOLATED 47 U.S.C. § 227(b)(1)**

65. Plaintiff incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

66. The TCPA prohibits placing calls using an automatic telephone dialing system or automatically generated or prerecorded voice to a cellular telephone except where the caller has the prior express consent of the called party to make such calls or where the call is made for emergency purposes. 47 U.S.C. § 227(b)(1)(A)(iii).

67. Defendant placed multiple telephone calls to Plaintiff's cellular telephone number that used a pre-recorded voice.

68. Defendant's calls were not made for emergency purposes.

69. Defendant's calls were made without any prior express consent.

70. Accordingly, Liberty Mutual violated the TCPA, including but not limited to, 47 U.S.C. §§ 227(b)(1).

71. Ward and the putative class members are entitled to an award of $500.00 in statutory damages for each call using pre-recorded voice placed by Liberty Mutual.

72. Ward and the putative class members are entitled to an award of treble damages in an amount up to $1,500 for each telephone call with pre-recorded voice made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(b)(1).

## COUNT II
### DEFENDANT VIOLATED 47 U.S.C. § 227(c)(5) AND 47 C.F.R. § 64.1200(c)

73. Plaintiff incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

74. Liberty Mutual made, or had made on its behalf, telephone calls constituting telephone solicitations to Ward and the putative class members.

75. Ward and the putative class members' telephone numbers were registered on the NDNCR at the time of the calls.

76. Ward and the putative class members each received two or more such calls in a 12-month period.

77. Accordingly, Liberty Mutual violated the TCPA, including but not limited to, 47 U.S.C. §§ 227(c)(5) and the TCPA's corresponding regulations.

78. Liberty Mutual knew or should have known that Ward and the putative class members had their numbers registered on the Do Not Call Registry.

79. Ward and the putative class members are entitled to an award of $500.00 in statutory damages for each call placed by Liberty Mutual.

80. Ward and the putative class members are entitled to an award of treble damages in an amount up to $1,500 for each telephone solicitation call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

## **Prayer for Judgment**

WHEREFORE, Plaintiff, Adam Ward, individually, and or behalf of all others similarly situated, requests the Court grant the following relief:

a. Enter an order against Defendant Liberty Mutual pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying this action as a class action and appointing Ward as the class representative and appointing his counsel as Class Counsel;

b. An award of statutory damages;

c. An award of treble damages;

d. An award of reasonable attorneys' and costs;

e. Enter a judgment in favor of Ward and the putative class that enjoins Liberty Mutual from violating the TCPA's regulations prohibiting Liberty Mutual from calling/texting numbers registered on the National Do Not Call Registry;

f. Award Ward and the class all expenses of this action, and requiring Liberty Mutual to pay the costs and expenses of class notice and administration; and,

g. Award Ward and the class such further and other relief the Court deems just and appropriate.

## **DEMAND FOR JURY TRIAL**

PLEASE TAKE NOTICE that Plaintiff, Adam Ward, demands a jury trial in this case.

Respectfully submitted,

KIMMEL & SILVERMAN, P.C.

By: *Craig Thor Kimmel*
    Craig Thor Kimmel, Esq.
    30 East Butler Ave.
    Ambler, PA 19002
    Phone: (215) 540-8888 x 148
    Facsimile: (877) 788-2864
    Email: kimmel@creditlaw.com
    teamkimmel@creditlaw.com


    Jacob U. Ginsburg, Esq. (*pro hac vice* anticipated)
    30 East Butler Ave.
    Ambler, PA 19002
    Phone: (215) 540-8888 x 104
    Facsimile: (877) 788-2864
    Email: jginsburg@creditlaw.com
    teamkimmel@creditlaw.com

Dated: March 1, 2024